IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC-19-215 |
| | * | |
| JONATHAN P. RAY, | * | |
| | * | |
| Defendant | * | |
| | * | |

## MEMORANDUM OPINION

The Court has received Defendant's Motion to Reconsider Pretrial Detention ("Defendant's Motion"), ECF No. 66. The Court has reviewed Defendant's Motion, the Opposition, the Reply, and Sur-Reply thereto. ECF Nos. 68, 70, and 72. No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.). The Court hereby DENIES Defendant's Motion.

### I. Relevant Procedural History

On April 29, 2019, Defendant was charged by way of indictment with possession of a firearm as a felon. *See* Indictment, 1, ECF No. 1. On May 16, 2019, after a detention hearing before this Court, an order of detention was entered. ECF No. 23. The Court found by clear and convincing evidence that:

> [N]o condition or combination of conditions of release will reasonably assure the safety of any other person and the community; [the] weight of evidence against [D]efendant is strong; [Defendant is] subject to [a] lengthy period of incarceration if convicted; [Defendant had a] prior criminal history; [Defendant has participated] in criminal activity while on probation, parole or supervision; [Defendant has a] history of alcohol or substance abuse; [and Defendant had] prior violations of probation, parole, or supervised release

*Id.*

Defendant now seeks review of this Court's order of detention due to the outbreak of the Corona virus ("COVID-19") and requests that the Court schedule a hearing on this motion and set appropriate conditions of release. Def.'s Mot. to Recons. Pretrial Det. 2.

## II. Analysis

Defendant contends that he previously suffered from a collapsed lung and that he "recovered from the injury but experiences continuing respiratory impairment as a result. *Id.* Defendant avers that "[i]t is well known that respiratory infirmities create a[n] increased risk of death or morbidity from coronavirus." *Id.* The Government avers that: (1) Defendant fails to account for the factors under the Bail Reform Act, 18 U.S.C. § 3142; (2) the D.C. Department of Corrections ("DOC") has established comprehensive procedures to avoid COVID-19 outbreak; and, (3) Defendant's health concerns do not merit release. Gov't Opp'n to Mot. for Recons. Pretrial Det. 3–10.

Under the Bail Reform Act, a detention hearing determination:

> [M]ay be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added).

a. **The COVID-19 Pandemic**

The presence of the COVID-19 creates a "material bearing" on the issue of whether there are conditions of release that can protect the community from the danger that Defendant presents. Yet, this Court has stated that the mere presence of the virus, even in the detention

2

setting, does not automatically translate to the release of a person accused. *See United States v. William Bilbrough*, *IV*, TDC 20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, TDC-19-238 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Teon Jefferson*, CCB-19-487 (D. Md. Mar. 23, 2020) (denying the defendant's motion even though the defendant was asthmatic); *United States v. Derek Crosby*, ELH-19-286 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite his previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler); *United States v. Ronald McCormick*, GLR-19-318 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite testing positive for COVID-19); *United States v. Dante Williams*, PWG-19-8 (D. Md. Apr. 2, 2020) (denying defendant's motion even though he suffered from allergies and asthma); *United States v. Jermaine Pate*, PWG-17-236 (D. Md. Apr. 7, 2020) (denying the defendant's motion even though he suffered from asthma); *United States v. Kair Mugaddim*, TDC-19-380 (D. Md. Apr. 9, 2020) (denying the defendant's motion because the defendant failed to show why he was an at-risk inmate).

As outlined by the Government, the Department of Corrections ("DOC") has taken and continues to take substantial steps to mitigate the effect of COVID-19. Opp'n to Mot. for Recons. Pretrial Det. 6–9. This includes policies that: preclude non-legal visitations; require inmate screening; quarantine of infected inmates; and extra cleaning. *Id.* Further, as of March 27, 2020, the DOC took additional measures to mitigate the spread of COVID-19 by cancelling certain inmate activities and reducing the time inmates spend outside of their cells. *Id.*

At the time of the filing of Defendant's Motion, "five CTF inmates have been diagnosed with COVID-19 . . . [but the CTF has taken] immediate action with regard to the detainees who have tested positive." *Id*. at 3. Defendant avers that the Government's contention that there are only five inmates that have tested positive in the Correctional Treatment Facility ("CTF") is incorrect. Reply to Gov't Resp. to Def.'s Mot. 1. According to Defendant, "it has been days since the government made this statement and the number has increased to 12 (to the best of counsel's knowledge)." *Id.* Even assuming *arguendo*, that Defendant's calculation is more accurate, this raw tabulation is only a factor to consider. And in this instance, it is a factor that does not weigh heavily. For months, medical experts have universally and correctly predicted that the raw numbers of those who would be infected would multiply. This fact has borne true no matter where in the country the virus has appeared. Far more important, is the ability of facilities — whether hospitals, nursing homes or detention centers — to reasonably respond to the burdens the pandemic creates in their respective settings. Some places are terribly busy but are addressing the needs of the infected. Others are overwhelmed, understaffed and ill-equipped to meaningfully oppose the problem. The Court, at this hour, does not have reliable information to suggest that Defendant's present custodians fall into the latter group. Merely casting numbers about the rising infection rate, without more, is not helpful.

Regardless of the exact number of positive tests, Defendant at no point provides medical records which substantiate his health claims. Defendant solely provides that "[a]ccording to family members, [Defendant] has been experiencing . . . symptoms of cough and sore throat . . . [however,] CTF staff are reportedly monitoring [Defendant's] temperature which has *remained normal*." Reply to Gov't Resp. to Def.'s Mot. 3, ECF No. 70 (emphasis added). Further, there is no indication that Defendant has been in contact with any detainees who have been diagnosed

4

with the virus. It is not for the Court to speculate where the "fine line" might be crossed where the scales weigh more favorably toward release. But on this record, it has not been crossed.

    b. **Bail Reform Act**

Further, the Court has a duty to balance the factors of the Bail Reform Act, with the overlay of concerns about the health and safety of Defendant and the community at large. Here, Defendant has been charged with possession of a firearm as a felon. ECF No. 1. Law enforcement obtained three firearms, including an "an assault rifle loaded with 23 rounds of 7.62 x 39mm ammunition in the magazine with one in the chamber." Gov't Opp'n to Mot. for Recons. Pretrial Det. 3–5. Although Defendant is innocent until proven guilty, as the Court found during the detention hearing, the weight of the evidence is strong. Unfortunately, this is not the first time Defendant was charged with possession of a firearm. According to the Government, "in 2008, [Defendant] was convicted [of] transporting a handgun on the roadway." *Id.* at 6. Further, Defendant has violated conditions of release in the past for failing to report or to keep contact with the probation office. *Id.* The Court cannot ignore the fact Defendant has had regular access to dangerous weapons, has a propensity of violating laws regarding handguns, and has shown in the past his inability to comply with his conditions of release. This substantially increases both Defendant's risk of flight and danger to the safety of the community.

    c. **Sixth Amendment Right to Counsel**

Defendant also raises a Sixth Amendment right to effective representation argument. Defendant argues that the COVID-19 pandemic implicates the Sixth Amendment "with particular force to [Defendant] whose trial remains scheduled for May 13." Reply to Gov't

Resp. to Def.'s Mot. 2.[1]  However, Defendant concedes that "[a]lthough CTF *still allows legal visitation*, the best public health advice is that such visits should be avoided for the safety of the inmates and the community.  *Phone calls have been made intermittently available* but the scheduling process has not been reliable or timely."  *Id.*  (emphasis added).  This is also confirmed by the Government who states that "while the DOC has taken additional precautions to protect detainees, it has continued to allow in-person legal visits for any defendant actively in trial."  Gov't Sur-Reply to Mot. to Recons. Pretrial Det. 1, ECF No. 72.

The Sixth Amendment right to counsel is not relevant to the Court's decision here under the Bail Reform Act.  *United States v. Xavier Lee*, ELH-19-159 (D. Md. Apr. 3, 2020) ([W]hile access to counsel may be a separate argument, it is not a factor for the Court's determination under 18 U.S.C. 3142(g).").  Nonetheless, the Court finds that given the state of affairs, and that the pandemic that has affected every aspect of our society, including the detention centers, delays and intermittent availability to phone calls are to be expected.  The "DOC has acknowledged that there will be delays in the processing of legal calls, due to the increase in legal call requests, but has noted that *diligent* efforts are being made to accommodate all requests under the circumstances."  *Id.* (emphasis added).  The Court refuses to summarily embrace or discard the DOC's efforts, however, due to their close proximity to the situation, they should at least be given an opportunity to solve their operational issues.

The Court acknowledges the tragic effects of the COVID-19 outbreak in our communities and in the detention centers.  However, the COVID-19 outbreak does not relieve the Court of its duty to ensure the safety of our community and Defendant's appearance at trial.

---

[1] The postponement of criminal jury trials has been extended through June 5, 2020.  *See In re Court Operations Under the Exigent Circumstances Created by COVID-19*, Standing Order, Misc. No. 00-308, (D. Md. Apr. 10, 2020).

### III. Conclusion

Defendant has failed to demonstrate that the changed circumstances created by the COVID-19 crisis sufficiently tips the scales of detention to reverse the earlier decisions by the Court. Accordingly, Defendant's Motion is denied.

April 13, 2020

/s/
Charles B. Day
United States Magistrate Judge

CBD/hjd