**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN PIERRE RAY,<br><br>Defendant. | Criminal Action No. TDC-19-0215 |

**MEMORANDUM ORDER**

On May 16, 2019, United States Magistrate Judge Charles B. Day ordered Defendant Jonathan Pierre Ray detained pending trial based on the finding that, pursuant to 18 U.S.C. § 3142(e), no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. On April 13, 2020, Magistrate Judge Day denied a Motion to Reconsider Pretrial Detention that was based on the advent of the COVID-19 pandemic. ECF Nos. 66, 76. Ray has now filed a Motion for Review of Detention Order, ECF No. 85, which seeks review of the detention order by a United States District Judge pursuant to 18 U.S.C. § 1345(b). The Motion is fully briefed.

The Court is required to conduct a *de novo* review of the Magistrate Judge's ruling. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)). Having reviewed the recording of the prior detention hearing, considered the Indictment and the Pretrial Services Report, reviewed the submitted briefs and exhibits on the present and all prior detention motions, and reviewed the Magistrate Judge's rulings on detention, the Court affirms the Magistrate Judge's detention order because the Court finds that, upon consideration of the factors in 18 U.S.C. § 3142(g), no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. The Court further finds

that the ongoing COVID-19 pandemic and its impact on the Correctional Treatment Facility at the D.C. Jail ("CTF"), the detention facility at which Ray is presently detained, does not provide a sufficient basis to alter the conclusion that detention is warranted.

## DISCUSSION

**I.     The Bail Reform Act**

Although the Motion to Reconsider focuses entirely on the impact of the COVID-19 pandemic, the Court first reviews the original detention order in which Magistrate Judge Day found that Ray must be detained pending trial because no combination of conditions would reasonably assure the safety of the community. 18 U.S.C. § 3142(e) (2018). In considering the question of danger to the community, the Court considers: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed to any person or the community upon release. 18 U.S.C. § 3142(g).

**A.     Nature and Circumstances of the Offense and Weight of the Evidence**

Ray is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On March 12, 2019, Ray and a co-defendant were observed by law enforcement in a vehicle in the parking lot of a church during a funeral for a homicide victim. Both appeared to remove firearms from their waist areas and place them within the vehicle. Upon an investigatory stop, law enforcement recovered two loaded handguns from the front part of the car, one on the floorboard and one in the glove compartment; a loaded assault pistol in a backpack in the vehicle; a quantity of marijuana on the floor of the car; and a quantity of cocaine on the co-defendant's person. A DNA test matched Ray's DNA to one of the loaded handguns. Having heard testimony about this incident at a hearing on a motion to suppress, the Court concludes that the weight of the

evidence against Ray is strong, including the observations of multiple law enforcement officers and the recovery of the firearm.

Although there is no evidence that Ray used the firearm in a violent offense, his possession of a loaded firearm in the vicinity of a funeral for a homicide victim had the potential to lead to violence. Notably, at the time of this offense, Ray had not only been convicted of five felony offenses, but he was on supervised release for a federal drug distribution conviction. Under these circumstances, this was a serious violation of § 922(g)(1) and one for which there is strong evidence.

### B. History and Characteristics of the Defendant

Ray is a 32-year-old man with lifelong ties to the Washington, D.C. area. He is single and lives with relatives, and he has a young son. Ray has little employment history other than working for less than a year as a community activist before his arrest in this case.

Ray has a lengthy criminal record including convictions in 2007 for attempted possession of phencyclidine ("PCP"), in 2008 for illegal transportation of a firearm, in 2011 for fleeing a law enforcement officer and destruction of property, in 2015 for distribution of 100 g or more of PCP, and in 2019 for manufacturing and selling a controlled substance. Four of these crimes occurred while Ray was on probation or supervised release, and he violated conditions of probation or supervised release on at least three of these offenses. Notably, the conviction for distribution of 100 g or more of PCP occurred in the United States District Court for the District of Maryland and resulted in a 65-month sentence, and after his release in June 2018, Ray did not report for supervised release. After Ray was arrested, temporarily detained, and then released on supervised release on November 6, 2018, he apparently committed the drug distribution offense underlying his 2019 conviction. *See* Petition on Supervised Release, *United States v. Ray*, No. TDC-13-0004

(D. Md. June 19, 2018), ECF No. 39; Order of Detention, *United States v. Ray*, No. TDC-13-0004 (D. Md. Sept. 24, 2018), ECF No. 44; Order of Release, *United States v. Ray*, No. TDC-13-0004 (D. Md. Nov. 6, 2018), ECF No. 49; Pretrial Services Report ("PTS Rep.") at 6.  Then, while still on federal supervised release, he was arrested on the pending charge on March 12, 2019.  Ray therefore has a documented history of drug trafficking, illegal firearms possession, and committing crimes while on criminal justice supervision.

        C.      **Nature and Seriousness of the Danger**

Although the charged offense did not involve the specific use of a firearm, it reveals that Ray has had access to unlawful firearms in the past.  More importantly, Ray's criminal history reveals not only a pattern of felony drug distribution convictions, but an inability or unwillingness to abide by court-ordered supervision.  As noted by Magistrate Judge Day at the detention hearing, many of Ray's felony convictions were for conduct that occurred while on court-ordered supervision.  Most particularly, the present offense is based on conduct that occurred while on supervised release for a federal drug trafficking conviction.  Indeed, after he was released after that sentence, Ray had not even reported to Probation for supervised release.  Where court-imposed conditions have failed to prevent Ray from committing drug trafficking and firearms offenses that present a danger to the community, the Court concludes by clear and convincing evidence that Ray presents a danger to the community if released, and that given his history of non-compliance with conditions, no condition or combination of conditions will reasonably assure the safety of the community.

**II.**      **COVID-19**

In his Motion to Reconsider, Ray focuses solely on the changed circumstance of the COVID-19 pandemic and its impact on CTF as reflected in recent rulings in *Banks v. Booth*, No.

20-849-CKK (D.D.C. 2020), a civil action challenging the constitutionality of conditions at the D.C. Jail and CTF (collectively, "D.C. Jail") during the pandemic. In seeking reconsideration, Ray has effectively argued that in light of the COVID-19 pandemic, there is new, material information bearing on the detention determination that warrants reconsideration, 18 U.S.C. § 3142(f), or that the pandemic provides a basis to permit temporary release "for preparation of the person's defense or other compelling reason," 18 U.S.C. § 3142(i).

At various times since March 2020, CTF has had a significant number of cases of COVID-19. On April 19, 2020, in *Banks*, Judge Colleen Kollar-Kotelly of the United States District Court for the District of Columbia, granted in part a Motion for a Temporary Restraining Order ("TRO") based in part on the finding that, after a review by independent monitors of the conditions at the D.C. Jail, there was a likelihood of success on the merits of the claim that the conditions of confinement violated the rights of detainees to due process under the Fourteenth Amendment to the United States Constitution and of inmates under the Eighth Amendment by failing to adequately protect their health and safety. *See Banks v. Booth*, No. 20-849-CKK, 2020 WL 1914896, at *11 (D.D.C. Apr. 19, 2020). According to the independent monitors' report, as of April 16, 2020, 65 detainees or inmates had tested positive at D.C. Jail, out of a total of approximately 1,020 inmates. Of these 65 detainees with positive tests, 57 were housed at CTF. Among other findings, the court concluded that as of the date of its Order, the D.C. Jail had failed to implement contact tracing when correctional staff tested positive; had been slow to respond to inmates displaying symptoms of COVID-19 such as fever and coughing; did not properly seal off quarantined inmates from the general population and require proper use of masks and gloves for those present in the quarantine unit; left inmates in isolation for having tested positive in draconian conditions without access to showers or laundry services; failed to operationalize and enforce

social distancing measures; and lacked sufficient cleaning supplies and sufficient guidance on how to sanitize that resulted in "[c]hallenges with cleanliness" outside of inmates' cells. *Id.* at *9-10. Although the Court did not order the immediate release or transfer of detainees, it ordered as a first step certain remedial actions, including that the D.C. Jail improve the triage process for suspected cases of COVID-19, provide proper cleaning supplies to each unit in the facility, and implement social distancing measures. *Id.* at *13-15.

On May 22, 2020, the independent monitors reported to Judge Kollar-Kotelly that the impact of COVID-19 at CTF had "changed significantly" and that the rate of new cases "had dropped significantly from peak levels." Report Submitted by *Amicus Curiae* at 16, *Banks v. Booth*, No. 20-849-CKK (D.D.C. May 22, 2020) (ECF No. 77). They also reported that D.C. Jail management had begun to implement improvements in its medical and environmental health programs, including by enhancing the process to respond to sick calls, providing more personal protective equipment, and hiring a sanitarian to oversee health and safety programs. *Id.* at 17-18.

On June 18, 2020, Judge Kollar-Kotelly granted a Motion for a Preliminary Injunction, finding that despite the noted improvements, the plaintiffs had established likely success on their claim that the conditions were unconstitutional based on continuing deficiencies, including those related to responses to sick call requests, social distancing, sanitation conditions, conditions in isolation units, and access to legal calls. *See Banks v. Booth*, No. 20-849-CKK, 2020 WL 3303006, at *8-12 (D.D.C. June 18, 2020). Notably, however, Judge Kollar-Kotelly did not find a likelihood of success on the claim that detainees were entitled to release from CTF, and she has yet to require the release of any detainees from CTF. *Id.* at *15, *18. Rather, the court ordered additional remedial measures to develop a plan to further reduce the number of detainees in the facility, provide faster responses to sick call requests, enforce social distancing, improve conditions for

detainees in isolation units, improve access to legal calls, and increase testing for COVID-19. *Id.* at *18-19.

Since that time, the rate of infection has declined even further. Since the start of the pandemic, 207 detainees have tested positive for COVID-19 and one has died. *Public Safety Agency COVID-19 Case Data*, Data for July 16, 2020, Gov't Dist. of Columbia (July 17, 2020), https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data ("July 16 COVID-19 Data"). However, all surviving detainees with COVID-19 have recovered or have been released or transferred, so as of July 6, 2020, there were no detainees at D.C. Jail who were in isolation because of a positive COVID-19 test. *See Public Safety Agency COVID-19 Case Data*, Data for July 6, 2020, Gov't Dist. of Columbia (July 7, 2020), https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data. As of July 17, 2020, that number remained at zero. *See* July 16 COVID-19 Data. 66 detainees remain in quarantine out of concerns relating to COVID-19. *Id.* Although the reduction in positive cases may have been as much the result of the coronavirus running its course at CTF as the result of specific improvements by correctional officials, the end result is the same: the current threat of COVID-19 at CTF and D.C. Jail is substantially reduced.

Even if the conditions at CTF presented a severe risk at this time, unlike other detainees who have sought release because of COVID-19, Ray, who is only 32 years old, has not identified a documented health condition that places him at high-risk for death or serious illness from COVID-19. Although he references a history of a collapsed lung and resulting respiratory impairment, such a condition is not identified by the Centers for Disease Control as a high-risk condition, and even if it were such a condition, Ray has not provided evidence to confirm that he has such a condition or facts demonstrating its severity. *People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control and Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated July 17, 2020). Notably, the Pretrial Services Report states that Ray reported that he was "in excellent physical health with no medical problems." PTS Rep. at 2. Where the facility at which Ray is presently incarcerated does not currently impose a threat that has required the release of specific detainees, and Ray is not a detainee with a demonstrated high-risk health condition, the Court finds that COVID-19 does not provide a "compelling reason" to reconsider the order of detention or to allow for temporary release under 18 U.S.C. § 3142(i). Although Ray also references the impact of COVID-19 on access to counsel, where trial in this case remains approximately five months away and the Chief Judge of the United States District Court for the District of Maryland issued an order on April 23, 2020 requiring CTF to provide reasonable access to counsel for detainees from this District, the Court does not find that COVID-19 hinders access to counsel to a degree that temporary release to assist in the "preparation of the person's defense" is warranted. 18 U.S.C. § 3142(i); Order, *In re: COVID-19 Pandemic Procedures*, Misc. No. 20-0146 (D. Md. Apr. 23, 2020) (ECF No. 14). To the extent that Ray and his counsel identify a specific barrier to attorney-client communication that needs to be addressed, he may seek assistance on that matter from the Court through a separate filing.

Finally, although the impact of COVID-19 may represent a material change in circumstances that could warrant reconsideration of the original detention order under 18 U.S.C. § 3142(f), that additional fact, which relates to Ray's "history and characteristics" as relating to his "physical . . . condition," 18 U.S.C. § 3142(g)(3)(A), must still be considered alongside all of the other § 3142(g) factors. Where the threat of COVID-19 at CTF has been reduced and Ray has

8

not shown that he is in a high-risk category, this additional circumstance is insufficient to alter the Court's finding, as discussed above, that the nature and circumstances of the offense and Ray's history and characteristics, particularly his lengthy criminal record, history of drug trafficking and firearms offenses, history of failing to comply with conditions of criminal justice supervision, and history of committing serious crimes while under such supervision, warrant the conclusion, by clear and convincing evidence, that Ray should be detained because conditions of release will not reasonably assure the safety of the community pending trial.  18 U.S.C. § 3142(e).

Accordingly, it is hereby ORDERED that:

1. The Motion for Review of Detention Order, ECF No. 85, is DENIED.
2. The Magistrate Judge's denial of the Motion to Reconsider Pretrial Detention is AFFIRMED.


Date:  July 17, 2020                                    /s/ *Theodore D. Chuang*
                                                    THEODORE D. CHUANG
                                                    United States District Judge